Judgment, Supreme Court, New York County (Joan A. Madden, J.), entered December 7, 2011, denying the petition and dismissing the proceeding, brought pursuant to CPLR article 78, which challenged a determination by respondent Board of Standards and Appeals of the City of New York (BSA), dated April 5, 2011, which affirmed the determination of respondent Commissioner of the New York City Department of Buildings (DOB), denying petitioner’s request to revoke certain permits and approvals issued to respondent Bowery Residents’ Committee, Inc. (BRC), unanimously affirmed, without costs.
Petitioner challenges the municipal respondents’ determinations, approvals and permits allowing respondent BRC to convert and operate a 12-story building at 127-131 West 25th *415 Street in Manhattan as a homeless shelter and offices. Petitioner claims that the facility is improperly classified, under the Zoning Resolution of the City of New York, as a Use Group 5 “transient hotel,” which permits BRC to operate it in the Ml-6 light manufacturing zoning district where the building is located, and that the proper use classification for the facility is Use Group 3 “non-profit institution with sleeping accommodations,” or Use Group 3 “health related facility,” which uses are prohibited in the Ml-6 district. Petitioner also seeks to enjoin the occupancy and operation of BRC’s 100,000 square-foot facility, housing a 32-bed detoxification unit, a 96-bed reception center and a 200-bed homeless shelter, pending compliance with all laws, rules and regulations; compel respondent the City of New York to submit the proposed facility to Uniform Land Use Review Procedure (ULURP) review; and enjoin operation of the proposed facility unless it complies with the Administrative Code of City of NY § 21-312 restriction on shelters exceeding 200 beds. Intervenor-petitioner, the City Council of the City of New York, also argues that the facility does not comply with the Administrative Code’s restriction on shelters exceeding 200 beds.
“BSA and DOB are responsible for administering and enforcing the zoning resolution, and their interpretation must therefore be given great weight and judicial deference, so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute” (Appelbaum v Deutsch, 66 NY2d 975, 977-978 [1985] [internal quotation marks and citations omitted]). The BSA rationally determined that the definition of “transient hotel” in section 12-10 of the Zoning Resolution is clear and unambiguous and that the proposed use of the building meets the three criteria of the definition, i.e., it (1) provides sleeping accommodations used primarily for transient occupancy; (2) has a common entrance to serve the sleeping accommodations; and (3) provides 24-hour desk service, housekeeping, telephone and linen laundering.
The court correctly determined that ULURP review is not required. The municipal respondents do not have a lease or the functional equivalent of a lease of the building (see NY City Charter § 197-c [a] [11]; Matter of Plaza v City of New York, 305 AD2d 604, 605-606 [2d Dept 2003]). Nor was it shown that the contract between BRC and the Department of Homeless Services is part of an actual housing and urban renewal plan (see NY City Charter § 197-c [a] [8]; West 97th-W. 98th Sts. Block Assn. v Volunteers of Am. of Greater N.Y., 190 AD2d 303, 309 [1st Dept 1993]).
*416 The court also properly rejected petitioner’s argument that the building operates in violation of the Administrative Code, which stipulates that “[n]o shelter for adults shall be operated with a census of more than [200] persons” (Administrative Code § 21-312 [2] [b]). The court, however, erroneously determined that the reception center and the 200-bed shelter constitute a single homeless shelter for purposes of the census limitation. The evidence shows that the reception center and the 200-bed shelter are separately operated, with separate budgets. Each program is separately licensed by the relevant state regulatory agency, and operated pursuant to separate agreements with the Department of Homeless Services. Although they are located in a single building, they are “separately operated programs,” which should have been evaluated separately for compliance with the Administrative Code.
Even assuming a census in excess of 200 persons, the court correctly determined that the building is permitted as a grandfathered shelter under the “Camp LaGuardia” exception to the Administrative Code’s 200-bed limit (see Administrative Code §§ 21-312 [2] [b]; 21-315 [a] [6]). Concur — Tom, J.P., Moskowitz, Manzanet-Daniels and Gische, JJ.